IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                           Case No. 03-10151-01-JWB

MAURICE FRANKLIN, JR.,

        Defendant.

**MEMORANDUM AND ORDER**

This case comes before the court on Defendant's motions for sentence reduction. (Docs. 236, 237, and 248[1].) The motions have been fully briefed. (Docs. 238, 239, 246.) Defendant's motions are DENIED for the reasons state herein.

**I.    Facts and Procedural History**

Defendant was convicted by a jury in 2004 of three counts of interference with commerce by threats or violence, four counts of brandishing or discharging a firearm during a crime of violence, two counts of felon in possession of ammunition, and one count of carjacking (in violation, respectively, of 18 U.S.C. §§ 1951, 924(c), 922(g)(1), and 2119). (Doc. 128.) On January 21, 2005, he was sentenced to 43 months on each of the robbery, carjacking, and felon-in-possession counts, to run consecutively. He was sentenced to 84 consecutive months on the first § 924(c) conviction, and 300 consecutive months on the other three § 924(c) convictions, for a total sentence of 1,242 months. (Doc. 144.) Defendant's convictions and resulting sentence were affirmed on appeal, *United States v. Franklin*, 195 F. App'x. 730 (10th Cir. 2006), and

---

[1] The third motion (Doc. 248) is a supplemental motion for compassionate release which was filed after Defendant made another request for release with BOP.

Defendant's subsequent collateral attacks on his conviction have been denied. (Docs. 189, 203, 227, 235). The Tenth Circuit detailed the evidence during trial as follows:

> Franklin's convictions arose from four separate incidents. The first occurred on the evening of March 9, 2002 in Independence, Kansas. A man with a gun entered the Taco Inn restaurant, pulled a mask down over his face, and directed a customer and two employees to empty the register and their pockets . . . .
>
> The second incident occurred on the evening of March 11, 2002. A man rang the doorbell at the residence of Julie and Robert Strain at 607 West Maple in Independence, Kansas. When Mrs. Strain answered the door, the man, who was wearing a mask and brandishing a gun, pushed his way into the residence and demanded money. After the Strains complied by giving the man money and some jewelry, he told Mrs. Strain to remove her clothes. The man proceeded to sexually assault Mrs. Strain with the gun while her husband and two young children watched. The man then directed Mr. Strain to get the keys to his van. Pointing the gun at Mr. Strain, the man directed him to drive to Independence High School. As they were driving into the parking lot of the high school, Mr. Strain opened the door of the van, jumped out, and ran into the high school. The man followed Mr. Strain and shot him in the leg before running away . . . .
>
> The third incident took place at Braum's Restaurant in Independence, Kansas on April 30, 2003. The restaurant had closed for the evening, and Tiffany Holt, an assistant manager, was in a back room counting money for the next morning's deposit. A man entered the room with a gun and demanded money. Holt put cash, checks, receipts, and credit card slips into a grey bank bag bearing a Bank of America logo and the terms "midday deposit." Holt described the perpetrator at trial as a black male wearing a blue flannel long-sleeved shirt, white long johns wrapped around his face, and a white baseball cap.
>
> The final incident giving rise to Franklin's convictions occurred on the evening of May 8, 2003 at the Kentucky Fried Chicken ("KFC") in Coffeyville, Kansas. A masked man with a gun entered the back of the restaurant and told employees to lay down on the floor. He then took the assistant manager, Jessie Payton, to the front of the store to empty the registers and open the safe. Payton did as he was told, placing the money into a bag with a KFC logo. While the man was at the front of the restaurant, one of the employees exited out the back and ran to an adjacent building to call police.

*Franklin,* 195 F. App'x at 732–34.

At sentencing, Mrs. Strain's victim statement was read into the record. (Doc. 158 at 4–6.) Mrs. Strain detailed the trauma and destruction that was caused by Defendant. Mrs. Strain had

2

been pregnant during the sexual assault and tragically lost the baby two days later.  Mr. Strain suffered from Post-traumatic Stress Disorder and unsuccessfully attempted to take his life on more than one occasion.  The children had to have mental health counseling and were scared to be in their own home.  Mrs. Strain reported that they had significant medical bills as a result of all the medical treatment.

Judge Wesley Brown sentenced Defendant in accordance with the sentencing guidelines and at the high end of the guidelines range.  (*Id.* at 7.)  On July 2, 2020, Defendant filed a motion for compassionate release on the basis that his sentence would have been significantly less after the elimination of the "stacking" rule for 18 U.S.C. § 924(c) offenses.  (Doc. 218.)  The court granted the motion and Defendant's sentence was reduced to 630 months, which is the sentence he would receive under the First Step Act.  (Docs. 223, 224.)

Defendant now seeks another reduction on the basis of a change in the Sentencing Guidelines.  (Doc. 237.)  Defendant also seeks compassionate release on the basis that his sentence is too long, there are disparities between his sentence and other offenders, his health issues, and his rehabilitative efforts.  (Doc. 236.)

II.     Analysis

   A. Amendment 821

Defendant seeks a reduction in his sentence on the basis that Amendment 821 to the Sentencing Guidelines provides an adjustment for certain offenders and limits the criminal history impact of "status points" in Section 4A1.1 of the Guidelines.  "A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization."  *See United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997).  Section 3582 allows for a possible sentence reduction for a defendant "who has been sentenced to a term of

imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(2). The Sentencing Commission amended the United States Sentencing Guidelines effective November 1, 2023. *See* 88 Fed. Reg. 28,254, 2023 WL 3199918 (May 3, 2023). Part A of Amendment 821 changes the computation of criminal history points that are added if the defendant committed the offense "while under any criminal justice sentence"—i.e., "status points." U.S.S.G. § 4A1.1(e) (2023). Under a new § 4C1.1 guideline, certain offenders receive a decrease of two offense levels if they are "zero-point offenders" whose offense meets certain criteria.

Defendant's brief is not clear on his precise arguments regarding the effect of the amendments. Liberally construed, he asserts that his criminal history points would put him in criminal history category IV under the amendment. (Doc. 237 at 6.) At the time of sentencing, he was in category VI. Defendant's criminal convictions resulted in a subtotal criminal history score of 19. That number was limited to 15 under U.S.S.G. § 4A1.1(c). (PSR ¶ 125.) Defendant was then assessed two additional criminal history points (or "status points") because he committed the instant offense while on probation in another case. He also received one additional point because the offense was committed less than two years following his release from custody for the sentence of the sale of crack cocaine within 1,000 feet of a school zone. (*Id.* ¶ 127.) He asserts that these points would not be added under Amendment 821. Even if he is correct, however, his criminal history score would remain at 15, which results in a criminal history category VI under the Guidelines. It does not result in his criminal history category changing to IV as he asserts. Therefore, he has not demonstrated that a change in the Guidelines had an impact on his Guidelines range that would require resentencing.

Further, to the extent that he contends he is entitled to an adjustment in his offense level under the amendment for certain zero-point offenders, he has failed to sufficiently show that he is entitled to such an adjustment. Defendant had at least 15 criminal history points. As a result, he is not a zero-point offender. *See* U.S.S.G. § 4C1.1(a)(1). Further, to be entitled to the adjustment, the offense could not have involved the possession of a firearm. *Id.* § 4C1.1(a)(7). Therefore, he would not be entitled to an adjustment.

Defendant's motion for a sentence reduction (Doc. 237) under § 3582(c)(2) on the basis that there is a change in the Sentencing Guidelines is denied.

### B. Compassionate Release

Next, Defendant moves for a sentence reduction under § 3582(c)(1)(A). Under that statute, a sentencing reduction is allowed when certain conditions are met including when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* Prior to 2018, that section only authorized the Director of the Bureau of Prisons to move for a reduction. *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021). The First Step Act changed this to allow a defendant to file his own motion for reduction after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *United States v. Mata-Soto*, 861 F. App'x 251, 253 (10th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). Exhaustion is mandatory. *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021).

The government argues that Defendant did not fully exhaust his motion for compassionate release with respect to sentencing disparity and health issues. (Doc. 239 at 4.) After receiving this response, Defendant made another request to the warden on March 14, 2024. (Doc. 246-2 at 3.) It was denied on the basis that he already requested compassionate release. (*Id.*) Defendant then

filed a supplemental motion for compassionate release. (Doc. 248.) The court finds that Defendant has exhausted his administrative remedies and will proceed to the merits.

The Tenth Circuit has endorsed a three-step test for district courts to use in deciding motions filed under § 3582(c)(1)(A). *McGee*, 992 F.3d at 1042 (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, the court may reduce a sentence if Defendant has administratively exhausted her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* A court may deny the motion when any of the three requirements is lacking and the court need not address the other requirements. *Id.* at 1043. But all requirements must be addressed when the court grants a motion for release under the statute. *Id.*

### i.     **Extraordinary and Compelling**

The court has independent discretion to determine whether a defendant has shown "extraordinary and compelling reasons" that warrant a reduction. *See id.* at 1044, 1048. Defendant argues that the following reasons warrant a sentence reduction: 1) his long sentence; 2) medical issues; and 3) rehabilitation.

In formulating his sentence, the sentencing court reviewed the United States Sentencing Guidelines and various factors under 18 U.S.C. § 3553(a). Defendant had a significant criminal history and his convictions also involved heinous crimes over a fifteen month period. Defendant argues that his long sentence is extraordinary and compelling because any other Defendant today would receive a sentence at least 200 months less than his imposed sentence. (Doc. 236 at 12.) Defendant's calculations are unclear. It appears that Defendant believes that another defendant

would not be sentenced to consecutive sentences if he committed the same crimes. Defendant, however, fails to cite to any authority and admits that the court has discretion to impose consecutive sentences. Notably, the presentence report indicated that the guidelines range for the robbery, carjacking, and felon-in-possession counts was 210 to 262 months. (PSR ¶ 165.) The court stated at sentencing that Defendant would be sentenced at the high end of the guidelines—258 months—for those counts. (Doc. 158 at 7.) To achieve this sentence, the court sentenced Defendant to 43 months on each of those six counts, to run consecutively. *Id.* at 8. Defendant has not pointed to any change in the sentencing guidelines that would affect this calculation.[2] Thus, if Defendant was sentenced today for these same crimes, he would be subject to the same guidelines range for those six counts. Further, in 2020, the court did reduce his sentence based on the change in the stacking provisions with respect to the § 924(c) counts. Therefore, any argument of sentence disparity lacks merit. His sentence of 630 months would be the sentence he would receive today for the same crimes.

Defendant also argues that his sentence is based on racial disparities but fails to provide any statistics or evidence of the same. Significantly, Defendant is serving the sentence that he requested in 2020 based on a change in the § 924(c) stacking provision.

Defendant further asserts that his sentence is unusually long in that he is subject to a consecutive Kansas state court judgment of 315 months. (Doc. 236 at 6.) A copy of the judgment reflects that it is to run consecutive to this case and was imposed after the sentence imposed in this case. (Doc. 236-5.) The judgment also reflects that he was convicted of attempted second degree murder and attempted aggravated robbery. The crimes were committed on January 24, 2002. The state charges involved different conduct than the conduct which resulted in the convictions in this

---

[2] The government represents that there are no further non-retroactive changes to the sentencing guidelines. (Doc. 239 at 12.)

case. Based on the facts recited herein, Defendant's criminal convictions did not involve crimes on January 24, 2002.[3] Therefore, the fact that Defendant is subjected to a consecutive state court sentence involving different conduct than the convictions in this case is not an extraordinary and compelling reason for a sentence reduction.

This court in its discretion sentenced Defendant to consecutive sentences to achieve a sentence within the guidelines range. Defendant's sentence was affirmed on appeal. After the First Step Act, this court reduced Defendant's sentence to 630 months, which was the sentence Defendant requested and the sentence he would receive under the First Step Act. The court finds that his 630-month sentence is not an extraordinary and compelling reason to reduce his sentence further.

Next, Defendant argues that his health conditions provide an extraordinary and compelling basis for release. Defendant states that he has high cholesterol, high blood pressure, post-traumatic stress disorder, major depressive disorder, and suffers seizures. (Docs. 246 at 6; 248 at 2.) Defendant has provided medical records regarding his high blood pressure. (Doc. 246-3.) Defendant, however, provides no evidence that his conditions are not being treated by prison staff. Rather, the exhibit indicates that prison staff are providing medical appointments for Defendant and medication for high blood pressure. Also, prison staff are advising Defendant of his responsibility to eat healthy food and exercise three times a week. *Id.* at 2. The court finds that Defendant's medical conditions are not an extraordinary and compelling basis to provide compassionate release.

---

[3] The court notes that counts 3–5 did involve criminal conduct on that date, but the jury could not reach a verdict as to that criminal conduct and the charges were dismissed. (Docs. 128–30; Tr. at 952.) In any event, the state court convictions involve different crimes than the convictions in this case.

Finally, Defendant has provided evidence that he has been rehabilitated in the form of several classes and certifications he completed. (Docs. 236-2, 236-3.) The court commends Defendant for his efforts to rehabilitate himself while incarcerated. While rehabilitation can be considered in combination with other factors, the court finds that it is not a sufficient basis here given the severity of Defendant's crimes and his criminal history. *See United States v. Saldana*, 807 F. App'x 816, 820 (10th Cir. 2020).

In sum, the court finds that Defendant has not shown extraordinary and compelling reasons to justify compassionate release.

### ii.     Policy Statement

On November 1, 2023, the Sentencing Commission issued an applicable policy statement for motions for compassionate release filed by defendants. U.S.S.G. § 1B1.13(b), Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement). The policy statement sets forth the following as the Sentencing Commission's determination of what constitutes extraordinary and compelling reasons for a sentencing reduction: (1) a defendant has certain terminal medical conditions; (2) is at least 65 years old and has experienced a serious deterioration in health; (3) has family circumstances which require him to act as a caregiver; (4) was a victim of sexual or physical abuse by or at the direction of a correctional officer; (5) any other circumstances or combination of circumstances that when considered by themselves or together with any of the first four categories, are similar in gravity to the circumstances described in those four categories; and (6) a change of law if defendant has served ten years of an unusually long sentence and the change would produce a gross disparity between the sentence being served and the sentence likely to be imposed today. U.S.S.G. § 1B1.13(b)(1)–(6).

Defendant argues that the fifth or sixth justification is applicable here. Under section five, the court may consider any other circumstance or combination of circumstances that are extraordinary and compelling when considered together. Based on the discussion herein, the court finds that Defendant's circumstances are not extraordinary and compelling. Under section six, Defendant must show a change in law which would result in a gross disparity between the sentence imposed and the sentence that would be imposed today. As discussed herein, Defendant's sentence is the same sentence that would be imposed today. Therefore, section six does not provide a basis for relief.

Defendant has thus not shown that his reduction is consistent with applicable policy statements issued by the Sentencing Commission.

### iii. Sentencing Factors

Finally, the court finds that the sentencing factors do not support a sentence reduction in this case. Some of the sentencing factors the court must consider include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and afford adequate deterrence; the guideline sentencing range; and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

Defendant's criminal activity was particularly heinous. Defendant committed violent crimes over a span of approximately fifteen months. These crimes had a significant impact on his victims as discussed herein. Significantly, Defendant sexually assaulted a victim in front of her children and husband. Defendant then shot the husband after chasing him down. Defendant's criminal activity in this case was not his first foray into violent crime. His criminal history is significant and began ten years prior to the start of the criminal activity in this case. His criminal

convictions include battery, riot, criminal use of a weapon, burglary, sale of crack cocaine, and others. (PSR ¶¶ 110–24.) His criminal convictions in this case and his criminal history support a finding that his sentence is justified by his criminal conduct.

Defendant does have some health conditions, but the evidence is that prison staff is providing health care to Defendant for those conditions. Defendant has also made attempts to better himself in prison which is commendable; however, these actions do not outweigh the criminal conduct.

Given Defendant's criminal conduct discussed herein, the court finds that reducing Defendant's sentence to time served or a reduction in the number of years would not reflect the seriousness of his criminal conduct, nor would it furnish adequate deterrence to criminal conduct or provide just punishment for the offense. The court finds that the imposed 630-month sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense.

### III.   Conclusion

Defendant's motions for sentence reduction (Docs. 236, 237, and 248) are DENIED. IT IS SO ORDERED. Dated this 21st day of August 2024.

                                              __ s/ John Broomes_____
                                              JOHN W. BROOMES
                                              UNITED STATES DISTRICT JUDGE